**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

-------------------------------------------------------------

| | | |
|---|---|---|
| THIS SIDE UP PRODUCTIONS, LLC | ) | Civil Action No. 2:17-cv-04357-WB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - v. - | ) | |
| | ) | |
| PATRICK J. "P.J." BENNETT, | ) | |
| | ) | |
| Defendant. | ) | |

-------------------------------------------------------------

**DEFENDANT P.J. BENNETT'S MOTION TO DISMISS PLAINTIFF'S**
**COMPLAINT AND BRIEF IN SUPPORT**

---

*/s/* Noah S. Robbins
Paul J. Kennedy
Noah S. Robbins
PEPPER HAMILTON LLP
Two Logan Square, 18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000

Shawn M. Dellegar, *pro hac vice to be filed*
Tynia A. Watson, *pro hac vice to be filed*
Benjamin N. Schiller, *pro hac vice to be filed*
Crowe & Dunlevy, PC
500 Kennedy Building
321 South Boston
Tulsa, OK 74103
(918) 592-9800

*Attorneys for Defendant, P.J. Bennett*

October 30, 2017

**ATTORNEYS FOR DEFENDANT P.J. BENNETT.**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

FACTUAL BACKGROUND ...............................................................................2

    A.    Plaintiff's FlyCam System ......................................................2

    B.    Plaintiff and Defendant's Relationship...............................2

    C.    The 2014 PGA Event and the 2014 NDA ...........................3

    D.    After the June 2014 Event ....................................................4

ARGUMENT AND AUTHORITIES ...................................................................5

    I.    LEGAL STANDARDS UNDER RULE 12(B)(6) FOR
        FAILURE TO STATE A CLAIM UPON WHICH RELIEF
        MAY BE GRANTED..............................................................5

    II.    PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT
        SHOULD BE DISMISSED. ...................................................5

        A.    Plaintiff's Breach of Contract Claim Fails Because the
            Contract is Invalid for Failure to Define Confidential
            Information..............................................................6

        B.    Plaintiff's Breach of Contract Claim Fails for Lack of
            Consideration. .......................................................7

        C.    Plaintiff's Claim for Breach of the NDA Fails because
            Bennett had no Duty and there can be no Breach. ...............9

    III.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM
        FOR MISAPPROPRIATION UNDER THE DEFEND TRADE
        SECRET ACT. .......................................................................9

        A.    Plaintiff's claim under the DTSA Fails because Plaintiff
            has not Sufficiently Defined its Trade Secrets.......................10

        B.    Plaintiff has Failed to Plead that that it has Maintained
            the Secrecy of its Trade Secrets or that its Trade Secrets
            are not Generally Known to Another Person.........................11

            1.    Plaintiff's claims under the DTSA fail because it failed
                to have a confidentiality agreement in place with
                Bennett prior to showing him its alleged trade secrets............12

            2.    Plaintiff's claims under the DTSA fail because it has
                disclosed its alleged trade secrets to others with no

**duty to maintain the confidentiality of the trade secrets.** ........................................................................13

3.    **Plaintiff's claim under the DTSA fails because it has disclosed its alleged trade secrets to the public.** ........................14

C.    **Plaintiff has Failed to Allege any Facts that Defendant Owed a Duty to Maintain the Confidentiality of a Trade Secret.** ........................................................................15

**CONCLUSION** ........................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................5

*AutoTrakk, LLC v. Automotive Leasing Specialists, Inc.*,
No. 4:16-CV-01981, 2017 WL 2936730 (M.D. Pa. July 10, 2017) ......................................14

*BDT Prods., Inc. v. Lexmark Int'l, Inc.*,
274 F.Supp.2d 880 ...............................................................................12, 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................5, 10

*Bruce Foods Corp. v. Texas Gas Serv.*,
No. EP-13-CV-231-KC, 2014 WL 652312 (W.D. Tex. Feb. 19, 2014)...................................8

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir.1997)......................................................................4

*Council for Educational Travel, USA v. Czopek*,
No. 1:11-cv-00672, 2011 WL 3882474 (M.D. Pa. Sept. 2, 2011)..........................................10

*Dooner v. Pui Yuen*,
No. 16-cv-1939, 2017 WL 3172986 (D. Minn. July 25, 2017) ................................................8

*Government Employees Insurance Co. v. Nealey*,
No. 17-cv-807, 2017 WL 2572519 (E.D. Pa. June 13, 2017)................................................11

*Mortensen v. Dazet*,
No. 2:08cv891, 2009 WL 1032800 (D. Utah Apr. 15, 2009) .................................................8

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir.1993)......................................................................4, 15

*Powell v. Bank of America, N.A.*,
No. 2:11cv438, 2011 WL 6130806 (E.D. Va. Dec. 8, 2011) .................................................8

*Ruckels haus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ......................................................13

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014)......................................................................4

*Sensus USA, Inc. v. Elliott Bay Engineering, Inc.*,
No. 10-cv-1363, 2011 WL 2650028 (W.D. Pa. July 6, 2011)..........................................10, 11

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*,
    No. 15-CV-211, 2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016)............................................10

*Veronica Foods Co. v. Ecklin*,
    Case No. 16-cv-07223-JCS, 2017 WL 2806706 (N.D. Cal. June 29, 2017) ...................14, 15

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.*,
    249 F.3d 958 (9th Cir. 2001) ...........................................................................................8

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3d. Cir. 2007)..........................................................................................15

*Wassef v. JPMorgan Chase Bank, N.A.*,
    No. CV–12–02480–PHX–DGC, 2013 WL 2896853 (D. Ariz. June 13, 2003) .......................8

STATUTES

Defend Trade Secret Act, 18 U.S.C. § 1831 *et seq.*.................................................................1, 16

18 U.S.C. § 1836(b)(1) ...........................................................................................................9

18 U.S.C. § 1839(3) ..............................................................................................................10

18 U.S.C. § 1839(3)(B) ..........................................................................................................11

18 U.S.C. § 1839(5) ..............................................................................................................10

18 U.S.C. § 1839(5)(B) ..........................................................................................................15

OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 5, 16

John D. Calamari and Joseph M. Perillo, *The Law of Contracts* § 2–9 (3d ed. 1987) ...................6

Restatement (Second) of Contracts § 33 (1979) .......................................................................6

Rule 8(a)(2)'s ........................................................................................................................5

1 WILLISTON ON CONTRACTS § 1:1 (4th ed.)..........................................................................5, 7

1 WILLISTON ON CONTRACTS § 4:21 (4th ed.)........................................................................5, 6

1 WILLISTON ON CONTRACTS § 7:4 (4th ed.)............................................................................7

1 WILLISTON ON CONTRACTS § 7:8 (4th ed.)............................................................................7

1 WILLISTON ON CONTRACTS § 63:14 (4th ed.)........................................................................5

Defendant Patrick J. "P.J" Bennett ("Bennett" or "Defendant"), hereby files this motion to dismiss the Verified Complaint in Equity [Dkt. No. 1] ("Complaint") filed by plaintiff, This Side Up Productions, LLC ("Plaintiff") pursuant to under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  In support of this motion, Bennett shows the Court as follows:

## **INTRODUCTION**

Plaintiff has brought its Complaint against Bennett for the sole purpose of limiting its competitor, Bennett's company, Supracam LLC ("Supracam"), in the market. Plaintiff asserts two claims for relief against Bennet. The first is that Bennett breached a non-disclosure agreement entered into between the parties on May 31, 2014 (the "NDA"). The second is for misappropriation under the Defend Trade Secret Act ("DTSA"), 18 U.S.C. § 1831 *et seq.* The basis for each claim is (1) that Plaintiff allegedly owns trade secrets, (2) that the NDA obligated Bennett to maintain the confidentiality of Plaintiff's trade secrets, and (3) that Bennett breached his duty and misappropriated Plaintiff's trade secrets.

Plaintiff's allegations under these claims fail because Plaintiff has failed to plead sufficient facts showing the existence of an enforceable contract upon which its claims depend. Plaintiff has also failed to plead the existence of any currently existing trade secrets, as it is clear from the Complaint that the alleged trade secrets have been disclosed to third parties, to the public, and to Bennett without any obligations to maintain confidentiality. Because Plaintiff's Complaint fails to allege sufficient facts, the claims therein should be dismissed in their entirety.

## FACTUAL BACKGROUND[1]

### A.    Plaintiff's FlyCam System

Plaintiff, a Pennsylvania limited liability company, owns an aerial camera system called the "FlyCam System." Compl. ¶¶ 16, 22. This system is utilized by Plaintiff to cover sporting events, films and commercials. *Id.* ¶ 15-16. Plaintiff's system utilizes a "two-point system." *Id.* ¶ 16. This system is not entirely covered by any patents owned by Plaintiff. *Id.* ¶ 19.   The FlyCam System is operated in plain view at large public events. *Id.* ¶ 24.

### B.    Plaintiff and Defendant's Relationship

Plaintiff and Bennett's company, Supracam, LLC ("Supracam"), are competitors in the aerial camera system industry.  Compl. ¶ 58.  Bennett previously owned ActionCam, a company that also used an aerial camera system for broadcast sporting events.  Compl. ¶ 32.  ActionCam and Plaintiff were parties to a 2012 non-disclosure agreement (the "2012 NDA").  *Id.* ¶ 29.  By early 2014, Bennett shut down ActionCam and started Supracam, "announcing plans to develop new intellectual property involving both four-point and two-point systems."  *Id.* ¶¶ 36-37.

In early 2014, Plaintiff was hired by a major television network ("Network") to cover a PGA tournament in May 2014 ("May 2014 PGA Event").  *Id.* ¶ 36.  Plaintiff was required by the Network to work this event with Bennett.  *Id.* ¶ 41.  During this event, Plaintiff's founder, Pat Hally ("Hally") observed Bennett taking photographs of the FlyCam system.  *Id.* ¶ 44.  Hally and Bennett then argued over whether Bennett should turn over the photographs to Hally.  *Id.* ¶ 44.  After Bennett refused to turn the camera disc over to Hally, the disc was lost.  *Id.* ¶¶ 44-45.  After the May 2014 Event was over, "Hally's wife discovered" Bennett's camera disc in equipment that had been used at the May 2014 Event.  *Id.* ¶ 46.  Hally confronted Bennett about photographs of the FlyCam System on the camera disc, and Bennett admitted the camera disc

---

[1] The following facts are accepted as true only for purposes of this motion.

was his but claimed the photographs were innocuous and routine.  *Id.* ¶¶ 48-49.   Although Bennett asked Hally to return his camera disc, Hally refused, and retained it.  *Id.* ¶¶ 49-50.

### C.      The 2014 PGA Event and the 2014 NDA

Plaintiff and Bennett were scheduled to work together again at another PGA event in June, 2014 ("June 2014 PGA Event").  *Id.* ¶ 51.   Hally demanded that Bennett be removed from the June 2014 PGA Event, but the Network threatened Hally that if he failed to cover the event they would "effectively blacklist him from future tournament coverage."  *Id.* ¶ 52.   Hally had no choice but to continue allowing Bennett near the FlyCam System.  *Id.* ¶ 53.   The 2012 NDA between Plaintiff and ActionCam was no longer in effect.  *Id.*   Plaintiff and Bennett entered into a new non-disclosure agreement on May 30, 2014 (the "NDA").  *Id.* ¶ 54.   This NDA is attached to Plaintiff's Complaint as Exhibit 1.  Ex. 1 to Compl.

The NDA only protects Plaintiff's information as described in Appendix A.  Ex. 1 to Compl. at paragraph 2.  The NDA clearly excludes any information that is in the public domain.  *Id.* at para. 3.   The NDA also excludes any information or designs that were not legitimately unique or proprietary to the Flycam System.  *Id.* at para. 3(e).  Finally, the NDA excluded information that was "discovered or created by the Receiving Party before disclosure by Disclosing Party."  *Id.* at para. 3(b).   Appendix A is not attached to the NDA in Plaintiff's Complaint.  Ex. 1 to Compl.  Paragraph 2 of the NDA provides the following definition of "Confidential Information":

> "Confidential Information" shall include specific engineering documentation and designs related to the Flycam System as identified in the List of Specific Flycam System Designs ("Specific List") below. Information identified in the Specific List, which are design features not currently included in the Flycam System Patent, is considered Confidential Information and included in this agreement **only if** it can be legitimately claimed as proprietary and unique to the Flycam System and is fully and accurately detailed in **Appendix A**."

3

*Id.* at para. 2 (emphasis added).[2]  Thus, to be considered "Confidential Information" under the NDA the information must be "fully and accurately detailed in Appendix A." *Id.*

### D. After the June 2014 Event

After the June 2014 PGA Event, Plaintiff and Defendant did not communicate or work together again.  Compl. ¶ 58.  After the June 2014 PGA Event, Bennett's company, Supracam, won several contracts to cover various sporting events, including NFL's Thursday Night Football games, PGA events, and the 2015 NBA draft.  *Id.* ¶ 61.  Supracam was also hired to cover the 2017 NFL Draft in April 2017 in Philadelphia.  *Id.* ¶ 66.  On May, 12, 2017, Hally's counsel sent Bennett a cease and desist letter (the "Letter"), and included a copy of the 2014 NDA.  *Id.* ¶ 69; Ex. 2 to Compl.  The NDA attached to the Letter did not include a copy of Appendix A.  *Id.* After requesting a copy of Appendix A, Bennett's counsel, finally received it on July 13, 2017. *See* email dated July 13, 2017, attaching a copy of Appendix A, attached as **Exhibit 1**.[3]

---

[2] Plaintiff omits any reference to Appendix A in the definition it provided of "confidential information" in the Complaint. Compl. at ¶ 55.

[3] Exhibit 1 is the subject of a pending motion for leave to file under seal, and is thus, not attached hereto. Motion for Leave to File under Seal, filed contemporaneously herewith. Appendix A is integral to Plaintiff's Complaint and can be considered by the Court. *See Schmidt v. Skolas,* 770 F.3d 241, 249 (3d Cir. 2014) ("[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997).  Where a plaintiff relies on a document but fails to attach it to the complaint, the plaintiff has sufficient notice that the document is at issue. *Id.* The court can consider such documents if a defendant attaches them to a motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). In this case, Appendix A is part of the NDA and this Court can consider Appendix A in evaluating Bennett's motion to dismiss.

## ARGUMENT AND AUTHORITIES

### I.   LEGAL STANDARDS UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alteration marks omitted).

While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," as Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Accordingly, although well-pled factual contentions must be taken as true, the Court may "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Iqbal,* 556 U.S.at 678.

### II.   PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT SHOULD BE DISMISSED.

Plaintiff's claim for breach of the 2014 Non-Disclosure Agreement ("NDA") fails and should be dismissed.  To prove a breach of contract, the plaintiff must prove (1) the existence of a contract; (2) breach; and (3) damages directly resulting from the breach.  1 WILLISTON ON CONTRACTS § 63:14 (4th ed.). To form a contract, there must be an offer, acceptance, and consideration. 1 WILLISTON ON CONTRACTS § 1:1 (4th ed.) The use of indefinite language or terms in a contract can render it unenforceable. 1 WILLISTON ON CONTRACTS § 4:21 (4th ed.) ("It

is a necessary requirement that an agreement, in order to be binding, must be sufficiently definite to enable the courts to give it an exact meaning").

In this case, Plaintiff has wholly failed to state facts that would plausibly show the existence of a contract.  First, there can be no enforceable contract, as it is clear that the NDA fails to define what the phrase "Confidential Information" includes, making the terms of the NDA wholly indefinite.  Second, the contract is unenforceable because Plaintiff's claims, and the NDA itself, clearly show that there was no consideration given to Bennett for the NDA.

**A.**    **Plaintiff's Breach of Contract Claim Fails Because the Contract is Invalid for Failure to Define Confidential Information.**

Plaintiff's claims fail because the NDA fails to clearly define the Confidential Information that is the subject of the NDA.  The Restatement (second) of Contracts states that there can be no acceptance where the terms of the contract are uncertain. Restatement (Second) of Contracts § 33 (1979).  Moreover, "[t]he fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance."  *Id.* "[A]n agreement to agree as to a material term does not result in a binding contract." John D. Calamari and Joseph M. Perillo, *The Law of Contracts* § 2–9 at 63, 64 (3d ed. 1987).

Plaintiff has attached what it states is a true and correct copy of the NDA.  However, section 2 of the NDA makes clear that information should be considered "Confidential Information" "**only if** it … is fully and accurately detailed in Appendix A."  Ex. 1 to Compl. at para. 2 (emphasis added).  The whole purpose of a non-disclosure agreement is to protect confidential information given to one party from another. Without having a clear definition of confidential information, the receiving party will not know what information they are agreeing to

6

maintain confidential.   Thus, the definition of confidential information in the non-disclosure agreement is an essential term to the contract.

Importantly, Plaintiff failed to attach Appendix A to the Complaint.[4]   The absence of Appendix A is curious. A review of the cease and desist letter, attached by Plaintiff to the Complaint as Exhibit 2, shows that Plaintiff's attorney also did not attach Appendix A to the Letter. There is an obvious reason for the absence of this important document from the Complaint.   Appendix A was not attached to the NDA at the time it was signed by either party. In fact, it was not until **after** Plaintiff's attorney sent Bennett the Letter that Bennett's counsel finally received a copy of what Plaintiff purports to be Appendix A.   *See* Ex. 1.

Because the definition of "Confidential Information" is dependent on Appendix A, a document that was not even part of the NDA, and a document that was not attached to the Complaint, this term of the NDA is indefinite, and the NDA is invalid.   Further, Plaintiff's failure to attach Appendix A to the Complaint renders Plaintiff's allegations regarding the existence of a contract wholly inadequate. Consequently, Plaintiff's claim that Bennett breached the NDA should be dismissed in its entirety for failure to state an enforceable contract.

**B.   Plaintiff's Breach of Contract Claim Fails for Lack of Consideration.**

Consideration is required to form a contract. 1 WILLISTON ON CONTRACTS §§ 1:1, 7:8 (4th ed.) "[C]onsideration required to support a promise is a detriment incurred by the promisee or a benefit received by the promisor at its request." 1 WILLISTON ON CONTRACTS § 7:4 (4th ed.).   Numerous courts have dismissed a plaintiff's claims for breach of contract where there

---

[4] Plaintiff may argue that Appendix A was not attached because it would have disclosed its alleged trade secrets in a public document. However, Plaintiff could have remedied this by filing a motion with the Court to seal Appendix A as an exhibit to the Complaint. Nonetheless, Plaintiff's failure to at least reference or mention that the definition of "Confidential Information" includes Appendix A is suspect.

was no consideration.[5] In this case, Plaintiff's claims fail because Plaintiff's Complaint lacks any allegations that consideration was provided to Bennett by Plaintiff for entering into the NDA.

Plaintiff's Complaint clearly shows, on its face, that the only beneficiary of the NDA was to Plaintiff (the promisse), and not to Defendant (the promisor).  Plaintiff admits that if Hally did not cooperate with Bennett, the "Network executives threatened to effectively blacklist him from future tournament coverage if he failed to attend the event."  Compl. ¶ 52. Additionally, Plaintiff alleges that it was "[g]iven no choice but to continue allowing Bennett near the FlyCam System for the June 2014 PGA Event," which is why Plaintiff asked Bennett to sign an NDA.  *Id.* ¶ 53.  Additionally, Plaintiff had already disclosed its alleged confidential information to Bennett prior to the signing of the NDA at the May 2014 PGA Event.  *Id.* ¶¶ 42-53.  These facts clearly show that the entire benefit to entering into the NDA went to Plaintiff, with no alleged benefit going to Bennett at all. Additionally, the NDA is completely silent on any benefit or purported consideration that would be for the benefit of Bennett.

---

[5] *See Dooner v. Pui Yuen*, No. 16-cv-1939, 2017 WL 3172986, at *1 (D. Minn. July 25, 2017) ("granting motion to dismiss as there was no consideration for the alleged contract and plaintiff's other claims failed as a result); *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 959-60 (9th Cir. 2001) (granting motion to dismiss on the grounds that there was no consideration); *Powell v. Bank of America, N.A.*, No. 2:11cv438, 2011 WL 6130806, at *3 (E.D. Va. Dec. 8, 2011) ("Because Powell has alleged no consideration that might support her alleged contract with Bank of America, she cannot state a claim against either Defendant for breach of that contract, and Defendants' Motion to Dismiss is GRANTED."); *Mortensen v. Dazet*, No. 2:08-cv-891, 2009 WL 1032800, at *1 (D. Utah Apr. 15, 2009) (finding no consideration for the enforcement of the alleged agreement in this case, and granting defendant's motion to dismiss."); *Bruce Foods Corp. v. Texas Gas Serv.*, No. EP-13-CV-231-KC, 2014 WL 652312, at *23 (W.D. Tex. Feb. 19, 2014); *Wassef v. JPMorgan Chase Bank, N.A.*, No. CV–12–02480–PHX–DGC, 2013 WL 2896853, at *4 (D. Ariz. June 13, 2003).

Because Plaintiff has failed to plead any facts showing consideration for the NDA, Plaintiff has not sufficiently plead breach of contract and its claim for breach of the NDA should be dismissed.

> ### C.    Plaintiff's Claim for Breach of the NDA Fails because Bennett had no Duty and there can be no Breach.

To state a claim for breach of contract, there must be a breach. 1 WILLISTON ON CONTRACTS § 63:1 (4th ed.). In this case, the obligation of Defendant under the NDA is to "hold and maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of the Disclosing Party."  As already discussed, the phrase "Confidential Information" in the NDA is dependent on Appendix A.  However, because Appendix A is not attached to the Complaint and was not sent to Bennett and not part of the NDA at the time of execution, there can be no obligation by Bennett to maintain the confidence of **any** information. Because Bennett has no duty under the NDA, there can be no breach of a duty. Thus, Plaintiff's claim for breach of contract fails and should be dismissed.

## III.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR MISAPPROPRIATION UNDER THE DEFEND TRADE SECRET ACT.

Plaintiff's allegations under the DTSA are wholly deficient and should be dismissed.  The DTSA provides a private right of action where a plaintiff is the "owner of a trade secret that is misappropriated...if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).  Under the DTSA, a trade secret includes:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

9

> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).  The DTSA defines "misappropriation" as "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty."  *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15-CV-211, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (citing 18 U.S.C. § 1839(5)).  Plaintiff's claim under the DTSA fails because Plaintiff is unable to sufficiently define its trade secrets.  Plaintiff's DTSA claim also fails because it is clear from the Complaint that Plaintiff's alleged trade secrets are generally known to others.  Finally, Plaintiff's claim fails because Plaintiff has failed, and is unable, to allege, that Bennett owed any duty to maintain the confidentiality of the alleged trade secrets.

**A.    Plaintiff's claim under the DTSA Fails because Plaintiff has not Sufficiently Defined its Trade Secrets.**

Under *Twombly*, plausibility requires "more than labels and conclusions."  *Twombly*, 550 U.S. at 561.  Thus, a plaintiff must clearly identify and describe the trade secret in question.  *See Council for Educational Travel, USA v. Czopek*, No. 1:11-cv-00672, 2011 WL 3882474, at *4 (M.D. Pa. Sept. 2, 2011) ("a general description of the trade secrets at issue was sufficient"); *but see, Sensus USA, Inc. v. Elliott Bay Engineering, Inc.*, No. 10-cv-1363, 2011 WL 2650028 (W.D. Pa. July 6, 2011) (while a plaintiff is not required to define trade secrets with particularity,

neither decision suggests that a complaint that fails to decide the trade secrets *at all* will survive a motion to dismiss)."[6]

Plaintiff has devoted numerous paragraphs of the Complaint in an attempt to define its alleged trade secrets. Compl. ¶¶ 16-28. However, these allegations are not relevant to the trade secrets at issue. The only trade secrets that Bennett could have misappropriated in this case would be those defined by the NDA.  The Complaint states that the "Confidential Information" includes "documentation and designs related to the Flycam System as identified in the … Specific List."  *Id.* ¶ 55.  However, the definition in the NDA also requires that definition to be fully defined in Appendix A. Ex. 1 to Compl. at para. 2.  As already set forth above, there was no Appendix A attached to the NDA and there is no Appendix A attached to the Complaint. Without this document, that would purportedly define the alleged trade secrets at issue, being attached for the Court and Defendant to review, Plaintiff has not defined its trade secrets **at all**. Plaintiff's DTSA claim should be dismissed for Plaintiff's failure to provide any allegations of what its purported trade secrets include.

**B.      Plaintiff has Failed to Plead that that it has Maintained the Secrecy of its Trade Secrets or that its Trade Secrets are not Generally Known to Another Person.**

The DTSA requires that the alleged trade secret information not be "generally known to … another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)(B).  Courts have found that failure to take reasonable measure "may be evident from the pleadings" to support a motion to dismiss. *Government Employees Insurance Co. v. Nealey*, No. 17-cv-807, 2017 WL 2572519, *8, 12 (E.D. Pa. June 13, 2017) (granting

---

[6] Because the DTSA was enacted rather recently, there is little case law analyzing how courts should analyze the requirements for sufficiently pleading a trade secret. Accordingly, federal decisions determining the plausibility for purposes of state Uniform Trade Secret Act claims are useful.

motion to dismiss where plaintiff attached an affidavit containing its trade secrets to its notice of removal and failed to obtain a private agreement to limit the use of the affidavit).   While, Plaintiff alleges numerous purported facts about the measures it took to protect its trade secrets (*see e.g.*, Compl. ¶¶ 19, 23-26, 29), these supposed measures are rendered moot by the fact that Plaintiff's alleged trade secrets have been disclosed to the public and to others without a duty to maintain the secrecy.   The facts alleged by Plaintiff clearly show that Plaintiff has failed to plausibly plead a trade secret claim under the DTSA.

      1.     Plaintiff's claims under the DTSA fail because it failed to have a confidentiality agreement in place with Bennett prior to showing him its alleged trade secrets.

The first fact, admitted by Plaintiff, is that there was no confidentiality agreement or other agreement between Plaintiff and Bennett at the time of disclosure of Plaintiff's trade secrets to Bennett at the May 2014 PGA Event. Plaintiff admits that it merely "believed that the 2012 NDA with ActionCam was still in effect."   Compl. at ¶ 42.   Plaintiff also admits that Bennett "shuttered ActionCam and started a new company" in early 2014.   *Id.* ¶¶ 36-37. Plaintiff goes on to admit, that in June, 2014, after "having learned that the 2012 NDA with ActionCam was no longer in effect, Hally attempted to protect Plaintiff's proprietary information from misappropriation by requiring Bennett to sign another NDA." *Id.*   ¶ 53.   Thus, Plaintiff admits that there was no valid agreement between the parties when it granted Bennett access to Plaintiff's alleged trade secrets at the May 2014 PGA Event.

This disclosure in May 2014 of Plaintiff's trade secrets to Bennett without any agreement to protect the confidentiality of such trade secrets, waives the trade secret. *See Ruckels haus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) (once "an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished."); *see also BDT Prods., Inc. v.*

*Lexmark Int'l, Inc.*, 274 F.Supp.2d 880, 891 ("A failure to require a third party to enter a confidentiality agreement to protect alleged trade secrets is one clear way to waive any trade secret protection that might exist").  Plaintiff has not alleged that Bennett continued to owe any duty under the 2012 NDA between Plaintiff and ActionCam. Indeed, Plaintiff has not attached the 2012 NDA to the Complaint, and there is no allegation that a duty existed under that expired agreement.  The after-the-fact NDA signed by Bennett on May 30, 2014 is insufficient to remedy Plaintiff's earlier disclosure to Bennett without an NDA in place.   Moreover, there is no language in the NDA that requires Bennett to maintain secrets disclosed to him by Plaintiff **prior to** the signing of the NDA.  Because Plaintiff has failed to show that it properly maintained the secrecy of its trade secrets by executing a non-disclosure agreement with Bennett prior to disclosure, Plaintiff's has failed to state a claim under the DTSA.

> 2. Plaintiff's claims under the DTSA fail because it has disclosed its alleged trade secrets to others with no duty to maintain the confidentiality of the trade secrets.

Plaintiff's Complaint defines its proprietary information broadly as the "FlyCam System."  Compl. ¶¶ 23.  However, Plaintiff more specifically defines its trade secrets in the NDA between it and Bennett as only including the "design features . . . detailed in Appendix A." Ex. 1 to Compl. at para. 2.  Plaintiff cannot have it both ways. Plaintiff's claimed trade secrets should be construed by the more narrow definition in its Complaint--the definition in the NDA that Plaintiff alleges Bennett had a duty to keep secret--the information "detailed in Appendix A."

If Plaintiff's alleged trade secrets are confined to that set forth in Appendix A, then it is clear that there can be no trade secrets.  Appendix A is clearly a document prepared by a third party (Tom Landsmann) to show to a third party (ESPN) that the FlyCam system meets certain safety requirements for a specific public event held by ESPN.  Ex. 1.  There is not one allegation

in the Complaint that Plaintiff had a confidentiality agreement with Tom Landsmann or ESPN. Further, Appendix A lacks any stamp of confidentiality that would notify a third party that its contents are confidential. *Id.* Plaintiff's general allegations that it entered into non-disclosure agreement with a manufacturer (Compl. ¶ 23), screened the public from view of the system (*Id.* ¶¶ 24-25), and "has a history of requiring non-disclosure agreements for those who are privy to the FlyCam system" (*Id.* ¶ 29) are completely insufficient to support Plaintiff's claims of protecting the confidentiality of its alleged trade secrets. Appendix A clearly lists two third parties by name that had access to the Appendix A and the alleged confidential information therein.  Surely if Plaintiff had some confidentiality agreement with these third parties, it would have included those allegations in their Complaint.  Plaintiff's failure to include Appendix A in the Complaint becomes even more suspect, as clearly Appendix A destroys any claim Plaintiff might have had in any purported trade secrets.  Plaintiff's failure to plead facts sufficient to show it has maintained the confidentiality of its trade secrets renders Plaintiff's DTSA claims insufficient.

     3.  Plaintiff's claim under the DTSA fails because it has disclosed its alleged trade secrets to the public.

   It is also clear that Plaintiff's claims fail because its alleged trade secrets have been posted on Plaintiff's website, and thus, disclosed to the public.  Information posted publicly on a plaintiff's website "cannot be trade secrets."  *AutoTrakk, LLC v. Automotive Leasing Specialists, Inc.*, No. 4:16-CV-01981, 2017 WL 2936730, *4 (M.D. Pa. July 10, 2017) (granting motion to dismiss with ability to re-plead on trade secret claim where defendant showed that much of alleged information was publicly disclosed on plaintiff's website); *see also Veronica Foods Co. v. Ecklin*, Case No. 16-cv-07223-JCS, 2017 WL 2806706, *14 (N.D. Cal. June 29, 2017)

(granting motion to dismiss plaintiff's DTSA claim where plaintiff had publicized much of its alleged trade secrets on its website).

A review of Plaintiff's publicly available website at www.flycamusa.com (the "FlyCam Website"), shows detailed information about Plaintiff's FlyCam system, which is similar or identical to that shown in Appendix A.[7]  Some similarities between Plaintiff's Website and Appendix A are shown in the table, attached as **Exhibit 2**.[8]

In many cases, the information contained on Plaintiff's website is even more detailed than that contained in Appendix A.  Because the information contained in Appendix A has been disclosed on Plaintiff's Website, there can be no trade secrets and Plaintiff's claims under the DTSA should be dismissed.

### C.    Plaintiff has Failed to Allege any Facts that Defendant Owed a Duty to Maintain the Confidentiality of a Trade Secret.

A claim for misappropriation under the DTSA must include allegations that the one who misappropriated the claim did so "under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." 18 U.S.C. § 1839(5)(B).  Plaintiff's claim of misappropriation under the DTSA clearly fails. As

---

[7] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and **matters of public record**." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (3d Cir. 1993) (emphasis added). Courts can take judicial notice of any information that "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). Courts have considered a party's website in deciding a motion to dismiss. *See e.g.*, *AutoTrakk, LLC*, 2017 WL 2936730, *4; *Veronica Foods Co.*, 2017 WL 2806706, *14; *but see Victaulic Co. v. Tieman*, 499 F.3d 227, 236-37 (3d. Cir. 2007) (finding improper for district court to take judicial notice of certain facts used as marketing tool on plaintiff's website).

[8] Exhibit 2 is the subject of a pending motion for leave to file under seal, and is thus, not attached hereto. Motion for Leave to File under Seal, filed contemporaneously herewith. While Defendant does not believe any information contained in Ex. 2 is confidential, Defendant has moved to seal the document out of an abundance of caution.

shown above, the NDA is invalid because it fails to define what Plaintiff's trade secrets are. Additionally, Plaintiff's claims fail because there is no trade secret where Plaintiff disclosed the alleged trade secrets to others, to Bennett prior to the NDA, and to the public. Plaintiff's DTSA claim should be dismissed for failure to state a claim of misappropriation.

## **<u>CONCLUSION</u>**

Plaintiff's Complaint fails to state a claim for breach of a valid contract or a claim for misappropriation of trade secrets under the Defend Trade Secrets Act and should be dismissed pursuant to Rule 12(b)(6).

Respectfully Submitted

Dated: October 30, 2017

*/s/* Noah S. Robbins
Paul J. Kennedy
Noah S. Robbins
PEPPER HAMILTON LLP
Two Logan Square, 18th & Arch Streets
Philadelphia, PA 19103
(215) 981-4000

Shawn M. Dellegar, *pro hac vice to be filed*
Tynia A. Watson, *pro hac vice to be filed*
Benjamin N. Schiller, *pro hac vice to be filed*
Crowe & Dunlevy, PC
500 Kennedy Building
321 South Boston
Tulsa, OK 74103
(918) 592-9800

*Attorneys for Defendant, P.J. Bennett*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2017, a copy of the foregoing Motion to Dismiss will be sent to all counsel of record via the Court's Electronic Case Filing System.

*/s/ Noah S. Robbins*
Noah S. Robbins
